UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

JACK COMBS and )
)
ROSEMARY COMBS, )          No. 6:12-CV-230-DLB-HAI
)
Plaintiffs, )
)          REPORT AND RECOMMENDATION
)          AS TO PLAINTIFFS'
v. )          MOTION TO REMAND AND FOR AN
)          AWARD OF ATTORNEY'S FEES AND
ICG HAZARD, LLC, et al., )          COSTS PURSUANT TO 28 U.S.C.
)          § 1447(c) [D.E. 8]
Defendants. )
)

*** *** *** ***

On December 17, 2012, Plaintiffs filed a Motion to Remand and for an Award of Attorney's Fees and Costs Pursuant to 28 U.S.C. § 1447(c).  D.E. 8.  Defendants responded in opposition to the Motion (D.E. 11), Plaintiffs have replied (D.E. 18), and therefore the matter is ripe for decision.  The presiding District Judge referred the Motion to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  D.E. 21.  For the reasons set forth herein, the Court **RECOMMENDS** that the Motion (D.E. 8) be **GRANTED**, in part, and **DENIED**, in part.

## I.      BACKGROUND

On October 17, 2012, Plaintiffs Jack and Rosemary Combs filed a civil complaint in Perry Circuit Court (Action No. 12-CI-504) against Defendants ICG Hazard, LLC, Arch Coal, Inc., and Fred Fields.  *See* D.E. 1-1 ("Complaint").  Defendants ICG and Arch Coal are alleged to be companies engaged in the business of leasing and mining coal.  *Id*. at 2-3.  Plaintiffs further allege that Fred Fields was engaged as a blaster for ICG at its mine site near Plaintiffs' home "[a]t all relevant times herein."  *Id.* at ¶ 4.  Plaintiffs allege that, "within the past year,"

Defendants have conducted blasting activities near Plaintiffs' residence in Perry County, Kentucky. *Id.* at ¶¶ 7-9.

Plaintiffs further allege that, in conducting such blasting activities, Defendants exploded large quantities of explosives in close proximity to Plaintiffs' property and dwelling. *Id.* at ¶ 9. According to Plaintiffs, these explosives produced "violent concussions and vibrations of the earth" which shook Plaintiffs' land and residence and caused "severe and substantial damage" to their property. *Id.* at ¶¶ 10, 12. Plaintiffs also allege they provided notice to Defendants of the threat to Plaintiffs' property caused by Defendants' blasting activities, but that Defendants "failed to undertake reasonable methods to control the effects of [their] operations." *Id.* at ¶ 11.

Plaintiffs also allege that "Defendants have allowed dirt, dust, debris and other flyable materials to escape their permitted boundaries and enter upon the Plaintiffs' home, property and contact the Plaintiffs' person," despite the fact that "Defendants have a duty to prevent dirt, dust, debris or other flyable materials from escaping their permitted boundaries and entering upon the Plaintiffs' property and contacting the Plaintiffs' person." *Id.* at ¶¶ 17-18. Plaintiffs claim that Defendants' conduct is an intentional trespass and/or a reckless trespass upon Plaintiffs' person and property and an assault and battery upon Plaintiffs' person. *Id.* at ¶¶ 20-21. Plaintiffs also claim that Defendants are strictly liable to Plaintiffs for the property damage resulting from the blasting activities. *Id.* at ¶ 13. Plaintiffs state that the damages to their property and health are well in excess of $4,000.00, the jurisdictional amount of the Perry Circuit Court. *Id.* at ¶ 25. Plaintiffs seek compensatory and punitive damages, a permanent injunction, and costs, including attorney's fees. *Id.* at ¶ 27.

On November 20, 2012, Defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. D.E. 1. Defendants claim that the most recent tax-assessed

value of the relevant property and Plaintiffs' characterization of the damage to that property as "severe" and "substantial," when considered with the various damages sought, make it more likely than not that the amount-in-controversy exceeds $75,000.00 as required by 28 U.S.C. § 1332(a). *See id.* at 8-13. Defendants also assert that complete diversity exists between the relevant parties to the lawsuit, again required by § 1332(a). *Id.* at 2-8. Defendants acknowledge that both Plaintiffs and Defendant Fields are citizens of Kentucky, a factor that would ordinarily defeat diversity jurisdiction. *Id.* at 3. However, Defendants claim that Fields's citizenship should be disregarded because he was fraudulently joined in an effort to defeat federal jurisdiction. *Id.* at 3-4.

On December 17, 2012, Plaintiffs filed the instant Motion to Remand pursuant to 28 U.S.C. § 1447(c). D.E. 8. Plaintiffs claim that Defendants have failed to establish that Fields was fraudulently joined or that the amount in controversy requirement was satisfied at the time of removal. *Id.*

## II.     FRAUDULENT JOINDER

Defendants bear the burden of demonstrating that removal of this action is proper. *Conrad v. Robinson*, 871 F.2d 612, 614 (6th Cir. 1989). Defendants contend that removal is proper pursuant to 28 U.S.C. § 1441(a) because this Court has original jurisdiction as a result of the parties' diversity of citizenship. Under the complete diversity rule, the citizenship of each plaintiff must be diverse from the citizenship of each defendant. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Since Plaintiffs and Defendant Fields are not of diverse citizenship, Defendants must establish that Fields was fraudulently joined in order to prevent remand of this case to the Perry Circuit Court.[1]

---

[1]     Plaintiffs argue that the question of whether Fields is fraudulently joined is arguably a question better suited to the state court, and that "[t]here is some authority that a local defendant,

3

## A.     Standard of Review

"Claims of fraudulent joinder must be asserted with particularity and supported by clear and convincing evidence."  *Parker v. Crete Carrier Corp.*, 914 F. Supp. 156, 159 (E.D. Ky. 1996).  The inquiry is whether Plaintiffs have at least a colorable cause of action against Fields in state court.  *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999).  Defendants must produce "sufficient evidence" that Plaintiffs cannot establish a cause of action against Fields under Kentucky law.  *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).  Stated differently, "the question is whether there is arguably a reasonable basis for predicting that [Kentucky] law might impose liability on the facts involved."  *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (internal quotation marks and citation omitted).

When deciding issues of fraudulent joinder, the Court "appl[ies] a test similar to, but more lenient [to a plaintiff] than, the analysis applicable to a Rule 12(b)(6) motion to dismiss."  *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012).  In reviewing allegations of fraudulent joinder, the Court may "pierce the pleading" and consider evidence normally reserved for summary judgment, such as affidavits presented by the parties.  *Id.*  However, "[t]he court

---

such as Fields, is not permitted to remove a case to federal court claiming that he is not liable under state law."  D.E. 8-1 at 7, n.3 (citing *Handley Mack Co. v. Godchaux Sugar Co.*, 2 F.2d 435, 435 (6th Cir. 1924)).  Under 28 U.S.C. § 1441(b)(2), a civil action removable solely on the basis of diversity jurisdiction "may not be removed if any of the parties in interest **properly joined** and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2) (emphasis added).  However, what Plaintiffs refer to as the "local defendant" prohibition is not determinative here, as the salient issue is **whether** Fields, the local defendant, **is** "properly joined."  Plaintiffs proceed to cite to *Murriel-Don Coal Co., Inc. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590 (E.D. Ky. 2011), in which District Judge Thapar summarized several problems created by the fraudulent joinder doctrine.  The undersigned acknowledges those problems, but, as Judge Thapar noted, "[f]raudulent joinder is still the law of this circuit, and until the law changes, this Court will faithfully apply it."  *Id.* at 597.  The Court will analyze and rule upon Defendants' claims of fraudulent joinder because, while Plaintiffs may disagree with the procedure allowing this Court to conduct that analysis, it is the law.

may look to material outside the pleadings for the limited purpose of determining whether there are 'undisputed facts that negate the claim.'" *Id.* (quoting *Walker v. Philip Morris USA*, *Inc.*, 443 F. App'x 946, 955-56 (6th Cir. 2011)). As the burden of establishing fraudulent joinder rests with the removing party, any disputed questions of fact or ambiguities in controlling state law must be resolved in favor of the nonremoving party. *See Coyne*, 183 F.3d at 493; *Alexander*, 13 F.3d at 949.

Before delving into each of Plaintiffs' claims, however, the Court addresses a preliminary disagreement between the parties as to whether the state or federal pleading rules govern in the fraudulent joinder context. Plaintiffs contend that the Court should apply Kentucky Rule of Civil Procedure 8.01, *see* D.E. 18 at 3-7, while Defendants argue that Federal Rule of Civil Procedure 8(a) governs, *see* D.E. 11 at 4. The Supreme Court's decisions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), fleshed out what a plaintiff must plead to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). In so doing, the Court altered the federal pleading standard by making it more stringent for plaintiffs. *See Ashcroft*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotations omitted)). Kentucky, by contrast, "still follows the old notice-pleading regime. So Kentucky courts may dismiss plaintiffs' complaints only where they 'would not be entitled to relief under any set of facts which could be proved' under the complaint." *Williams v. Altman, McGuire, McClellan & Crum*, Civ. No. 12-131-ART, 2013 WL 28378 at *3 (E.D. Ky. Jan. 2, 2013). Because Kentucky's pleading standard is more lenient than the federal rules, which standard applies matters as to whether Plaintiffs have asserted colorable claims against Fields.

As several recent decisions of this Court with which the undersigned agrees have recognized, the Kentucky pleading rules apply, and Defendants' reliance on *Twombly* and *Iqbal* is therefore misplaced.  "The test for fraudulent joinder is whether a reasonable basis exists for predicting that the plaintiff's claims against the non-diverse defendant could succeed *under state law*.  It makes little sense to measure the state-law viability of such claims, which were originally filed in state court, by federal pleading standards."  *In re Darvocet, Darvon and Propoxyphene Products Liability Litigation v. McKesson Corp.*, Civ. Action No. 2:12-50-DCR, 2012 WL 2919270 at *6 (E.D. Ky. July 27, 2012) (emphasis in original).  *See also Williams*, 2013 WL 28378 at *3 ("Perhaps [Plaintiff's] allegations are not as artfully pleaded as the defendants would like.  But their criticisms of her complaint implicitly rely on the standard set out in *Iqbal* for reviewing a complaint on a motion to dismiss.  The Court must apply a 'more lenient' standard to the complaint when considering a motion to remand and allegations of fraudulent joinder.").[2]

Having determined that Kentucky Rule 8.01 applies, the Court now looks to what is required by that rule.  In Kentucky, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Ky. R. Civ. P. 8.01(1)(a).  Kentucky courts may dismiss a complaint only where a plaintiff "would not be entitled to relief under any set of facts which could be proved."  *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010).  "It is immaterial

---

[2]     Defendants rely upon *Conn v. Markwest Hydrocarbon*, *Inc.*, No. Civ. A. 05-67-DLB, 2006 WL 782728 at *6 (E.D. Ky. Mar. 27, 2006), in their argument that the federal pleading rules apply because that opinion states "actual pleading standards in federal actions are governed by federal law, even in diversity actions where state substantive law applies." *Conn v. Markwest Hydrocarbon*, *Inc.*, No. Civ. A. 05-67-DLB, 2006 WL 782728 at *6 (E.D. Ky. Mar. 27, 2006). The decision in *Conn*, however, predated both *Iqbal* and *Twombly*.  In 2006, when *Conn* was decided, the state and federal pleading standards were the same. *See id*. at *6 (stating "[U]nder the federal rules, a complaint is required to set forth 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a), sufficient to 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  This is also Kentucky's pleading standard.  Ky. R. Civ. P. 8.01(1)." (citation omitted)).  Thus, the Court did not actually resolve the pleading dispute currently at issue.

whether the complaint states conclusions or facts as long as fair notice is given." *Pierson Trapp Co. v. Peak*, 340 S.W.2d 456, 460 (Ky. 1960) (internal quotation marks omitted). Further, "the Rules of Civil Procedure with respect to stating a cause of action should be liberally construed" and "much leniency should be shown in construing whether a complaint . . . states a cause of action." *Smith v. Isaacs*, 777 S.W.2d 912, 915 (Ky. 1989) (internal quotation marks omitted and markings in original).

The Court finds, pursuant to the above framework, that Plaintiffs have asserted colorable claims against Fields for assault, battery, trespass, and strict liability. However, Plaintiffs have failed to assert colorable claims against Fields for negligence and vicarious liability. The Court's reasoning follows.

**B.    Plaintiffs Have Asserted Colorable Claims Against Fields for Assault, Battery, Trespass, and Strict Liability**

*1.    Assault and Battery*

Defendants argue that Plaintiffs have not asserted colorable claims against Fields for assault and battery. D.E. 11 at 6. They state that "[t]o be liable for the intentional torts of assault, battery or trespass, the individual defendant must have actually personally engaged in the improper activity or conduct at issue and intended to take this action." *Id.* Defendants have filed an affidavit from Fields in which he states that he does not "personally engage in the detonation of explosives at any mine" and that he has not done so for at least twelve years. D.E. 1-3 at ¶ 3. Fields states that he is employed as a blasting superintendent at ICG, and his job duties include "inventory management, ordering supplies, reviewing seismic data, maintaining blasting records, and interacting with regulatory entities concerning the use of explosives at several mines." *Id.* at ¶ 4. Fields also states that he does not "personally supervise all day to day activities of those employees who do set off blasts at the mine sites, and [is] not authorized to hire or fire any

7

blaster." *Id.* at ¶ 5.  Fields states that he has no ownership interest in ICG and receives no profits from ICG's mining activities.  *Id.* at ¶ 6.

Defendants, noting that the Court may pierce the pleadings and consider summary judgment evidence, argue that "[the] Court is entitled to consider Fields' Affidavit in determining that there are truly undisputed facts—that Fields did not detonate explosives or actively take part in blasting and did not profit from blasting—and that these undisputed facts negate the direct claims against Fields for assault, battery, trespass, strict liability, or, in the event the Court determines it was pled, ordinary negligence."  D.E. 11 at 7, n.3.  Plaintiffs, on the other hand, contend that they have alleged contrarily in their Complaint that Fields was at all times relevant to the dispute engaged as a blaster for ICG and conducted blasting activities near the Plaintiffs' residence.  D.E. 8-1 at 16-17.  Plaintiffs note that any disputed questions of fact should be resolved in the nonremoving party's favor.  *Id.* at 17.

In the fraudulent joinder context, the Court may pierce the pleadings and consider summary judgment evidence, such as affidavit content, but only for the limited purpose of identifying "undisputed facts that negate the claim."  *Casias*, 695 F.3d at 433.  Thus, "[a] solitary self-serving affidavit cannot eliminate the prospect of any dispute, particularly where the complaint is in direct disagreement."  *Smith v. Smithkline Beecham Corp.*, Civ. Action No. 10-73-ART, 2010 WL 3432594 at *4 (E.D. Ky. Aug. 30, 2010).  In their Complaint, Plaintiffs contend that Fields "was engaged as a blaster for ICG Hazard, LLC on its mine site near the Plaintiffs' homes."  Complaint at ¶ 4.  Defendants, through Fields's affidavit, allege contrarily that Fields has not personally engaged in the detonation of explosives at any mine in the past twelve years.  D.E. 1-3 at ¶ 3.  The Court may only consider Fields's affidavit for the limited purpose of determining any undisputed facts that negate the claim.  The parties dispute the nature

and extent of Fields's activities at the mine site, and the Court must resolve any disputed questions of fact in favor of the non-removing party. Thus, the Court analyzes Defendants' claims of fraudulent joinder by crediting Plaintiffs' factual allegation that Fields *was* engaged as a blaster for ICG on its mine site near Plaintiffs' homes.

In Kentucky, common law civil battery is defined as "any unlawful touching of the person of another, either by the aggressor himself, or by any substance set in motion by him." *Vitale v. Henchey*, 24 S.W. 3d 651, 657 (Ky. 2000) (quoting *Sigler v. Ralph*, 417 S.W.2d 239, 241 (1967)). Assault, on the other hand, "requires the threat of unwanted touching." *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. App. 2001). Plaintiffs' Complaint states that at all times relevant to the dispute herein, Fields was engaged as a blaster for ICG on its mine site near Plaintiffs' homes. Complaint at ¶ 4. The Complaint further states that "Defendants have allowed dirt, dust, debris and other flyable materials to escape their permitted boundaries and . . . contact the Plaintiffs' person." *Id.* at ¶ 17. The Complaint alleges that "Defendants['] conduct of casting and throwing dirt, dust, debris and other flyable materials upon the Plaintiffs' person is an assault and battery upon the Plaintiffs' person and was intentional and/or a reckless and wanton act." *Id.* at ¶ 21.

Plaintiffs assert colorable claims against Fields for assault and battery. Plaintiffs allege that, while engaged as a blaster at ICG's mine site near their homes, Fields cast and threw dirt and debris, which contacted Plaintiffs' person. Under Kentucky law, Fields could be liable for battery for setting in motion a substance which unlawfully touched the person of Plaintiffs. Likewise, there is at least a reasonable basis that Kentucky law might impose liability for assault. If Fields set in motion a substance which unlawfully touched the person of Plaintiffs, there is a reasonable basis for finding that Fields engaged in conduct that constitutes a threat of unwanted

touching.  Defendants' arguments hinge upon their claim that Fields did not actually engage in blasting or detonate explosives, but, for the reasons stated above, the facts must be construed in Plaintiffs' favor.

The determination that Plaintiffs have stated at least one colorable claim against Fields would normally end the Court's analysis, as diversity jurisdiction is destroyed, and the case must be remanded to state court.  However, in order to provide a complete record for the District Judge's review in the event of objections, the Court analyzes Plaintiffs' remaining claims.

2. *Trespass*

Relying on the statement in Fields's affidavit that he did not personally engage in the detonation of explosives, Defendants also argue that Plaintiffs have failed to state a colorable claim against Fields for trespass.  D.E. 11 at 6.  "Trespass is an intended or negligent encroachment onto another's property that is not privileged."  *Brockman v. Barton Brands, Ltd.*, No. 3:06-CV-332-H, 2009 WL 4252914 at *5 (W.D. Ky. Nov. 25, 2009).  "[T]repass . . . occurs when an object or thing enters a person's property and interferes with his or her possession or control."  *Id.* (citing *Bartman v. Shobe*, 353 S.W.2d 550, 555 (Ky. 1962)).  "Claims for trespass . . . require that the Plaintiffs establish causation, i.e., that the Defendants caused the harm."  *Barnette v. Grizzly Processing, LLC*, 809 F. Supp. 2d 636, 642 (E.D. Ky. 2011) (citing *Dickens v. Oxy Vinyls, LP*, 631 F. Supp. 2d 859, 865 (W.D. Ky. 2009)).

Defendants contend that there is no colorable claim for trespass against Fields because "[t]o be liable for the intentional tort[ ] of . . . trespass, the individual defendant must have actually personally engaged in the improper activity or conduct at issue and intended to take this action."  D.E. 11 at 6.  As described previously, however, the Court must assume, in its fraudulent joinder analysis, that Fields was engaged as a blaster at ICG's mine site near

Plaintiffs' homes and that he "allowed dirt, dust, debris and other flyable materials to escape their permitted boundaries and enter upon the Plaintiffs' home [and] property."  Complaint at ¶ 17.  Plaintiffs further allege that "Defendants['] [including Fields] conduct of casting and throwing dirt, dust, debris and other flyable materials upon the Plaintiffs' property is an intentional trespass and/or a reckless trespass."  *Id.* at ¶ 20.  Construed liberally, Plaintiffs' Complaint alleges that Fields cast and threw dirt, dust, debris and other flyable materials upon Plaintiffs' property.

Under the lenient standard employed in the fraudulent joinder context, there is at least a reasonable basis for predicting that Plaintiffs' trespass claim against Fields could succeed under Kentucky law.  Defendants clearly dispute certain factual allegations in Plaintiffs' Complaint; however, settling such disputes is beyond the scope of the Court's fraudulent joinder analysis. Plaintiffs have stated a colorable claim for trespass against Fields.

   *3.*     *Strict Liability*

Defendants argue that Plaintiffs have failed to state a colorable claim against Fields for strict liability, contending that liability is only imposed against the blasting entity—in this instance ICG and/or Arch Coal—which profits from the blasting.  D.E. 11 at 6.  "'Strict liability' is a judicial doctrine which relieves a plaintiff from proving specific acts of negligence and protects him from certain defenses."  *Carmical v. Bullock*, 251 S.W.3d 324, 326 (Ky. App. 2007).  Kentucky courts have previously applied the strict liability doctrine to blasting cases. *See Stathers v. Garrard Co. Bd. of Educ.*, Nos. 2010-CA-002212-MR, 2010-CA-002281-MR, 2012 WL 3762035 at *4 (Ky. App. Aug. 31, 2012) (citing *Island Creek Coal Co. v. Rodgers*, 644 S.W.2d 339, 348 (Ky. App. 1982)).

In support of their argument that strict liability can only be imposed upon the blasting entity, Defendants cite to two Kentucky cases in which the court either imposed or discussed imposing strict liability upon a corporation or partnership engaged in blasting operations.  *See* D.E. 11 at 6 (citing *Island Creek*, 644 S.W.2d at 348, and *Adams' Adm'r v. Callis & Hughes*, 69 S.W.2d 711, 713 (Ky. 1934)).  Defendants also cite to a third case in which the court noted, in the products liability context, that the justification behind the strict liability doctrine is to impose liability upon members of the marketing chain best able to bear the loss and insure against the risk.  *Id.* (citing *Embs v. Pepsi-Cola Bottling Co.*, 528 S.W.2d 703, 705 (Ky. 1975)).  None of these cases, however, holds that strict liability can **only** be imposed on the entity or otherwise expressly prevents a claim of strict liability against an individual such as, in this instance, an individual engaged in blasting operations.

Further, one Kentucky case has noted that "[i]n Kentucky **an individual** is absolutely liable for the harm he does to another's property resulting from blasting or detonating activities." *Brewer v. Sheco Construction Co.*, 327 F. Supp. 1017, 1019 (W.D. Ky. 1971) (emphasis added). Thus, it is not clear there can be no recovery against Fields in strict liability, as required for the Court to find fraudulent joinder.  *Collins v. Montpelier U.S. Ins. Co.*, Civ. No. 11-166-ART, 2011 WL 6150583 at *3 (E.D. Ky. Dec. 12, 2011).  It may well be, as Defendants contend, that the justifications behind strict liability do not support imposing it on Fields.  At this juncture, however, the Court must construe all ambiguities—including those concerning controlling state law—in Plaintiffs' favor.  *See Coyne*, 183 F.3d at 493; *Alexander*, 13 F.3d at 949.

In their Complaint, Plaintiffs state that, at all times relevant to this dispute, Fields was engaged as a blaster for ICG on its mine site near Plaintiffs' homes.  Complaint at ¶ 4.  Plaintiffs also state that Defendants, including Fields, conducted blasting activities near the Plaintiffs'

residence.  *Id.* at ¶ 7.  Plaintiffs allege that, as blasting is an inherently dangerous activity, Defendants, including Fields, are strictly liable to Plaintiffs for the property damage resulting from their blasting activities.  *Id.* at ¶ 8.  Plaintiffs further claim that Defendants have exploded large quantities of explosives in close proximity to Plaintiffs' property, which subjected Plaintiffs' property to severe and substantial damage.  *Id.* at ¶ 13.  Assuming, as the Court must, that Fields engaged in blasting activities near Plaintiffs' residence, and because Kentucky courts have recognized that strict liability applies in the blasting context, Plaintiffs have stated a colorable claim against Fields for strict liability.  The likelihood of Plaintiffs' success is not dispositive, as the Court's only inquiry is whether there is a reasonable basis for proceeding against Fields in strict liability.  Given the mere principles relied upon by Defendants instead of controlling Kentucky law, the Court finds that there is.[3]

**C.    Plaintiffs Have Failed to Assert Colorable Claims Against Fields for Negligence and Vicarious Liability**

   *1.    Negligence*

   Defendants dispute whether Plaintiffs have stated any claim for negligence against Fields, much less a colorable one.  D.E. 11 at 3.  Defendants argue "there are no facts in the Complaint

---

[3]     Plaintiffs also cite to two administrative regulations that they argue support their contention that the law does not immunize an individual employee engaged in blasting operations from damages caused by blasting.  D.E. 8-1 at 19-20.  The Court has reviewed these regulations and finds that they do not have any bearing on whether there is a colorable claim for strict liability against Fields for fraudulent joinder purposes.  The first regulation, 405 KAR 7:040 § 2, states that "[a] person or operator engaged in surface coal mining and reclamation operations shall not throw, pile, dump, or permit the throwing, piling, dumping . . . of any . . . dirt, debris . . . or any other materials or substances of any kind or nature beyond or outside an area of land which is under permit . . . ." 405 KAR 7:040 § 2.  The other regulation cited by Plaintiffs, 405 KAR 1:010 § 1(39) defines "person" as "any individual, partnership, corporation, association, society, joint stock company, firm, company, or other business organization."  405 KAR 1:010 § 1(39).  These regulations do not address the liability of an individual or organization that fails to abide by their terms so as to affect the Court's analysis herein.

supporting an inference that Fields could reasonably be held liable for such a claim." *Id.* at 5-6.

Plaintiffs, on the other hand, claim that:

> there appears to be sufficient allegations in the Plaintiffs' Complaint to sustain a claim for ordinary negligence under Kentucky common law, since the Plaintiffs have alleged that "the Defendants ha[d] a duty to prevent dirt, dust, debris or other flyable materials from escaping their permitted boundaries and entering upon the Plaintiffs' property and contacting the Plaintiffs' person," but that nonetheless "the Defendants have allowed dirt, dust, debris and other flyable materials to escape their permitted boundaries and enter upon the Plaintiffs' home, property and contact the Plaintiffs' person," and have also "failed to undertake reasonable methods to control the effects of [their] operations. Furthermore, Plaintiffs' Complaint contains repeated allegations of "reckless" misconduct, and also includes a specific allegation "[t]hat the Plaintiffs' person and property have been damaged by the Defendants' acts and failures to act as more specifically set forth above."

D.E. 8-1 at 11 (markings in original).

Under Kentucky law, the elements a plaintiff must plead to state a cause of action for negligence are: "(1) the existence of a duty, required by law, which requires the defendant to conform to a certain standard of conduct; (2) failure on the defendant's part to conform to that standard; (3) a causal connection between the defendant's conduct and injury to the plaintiff; and (4) actual loss or damage." *Radcliff Homes, Inc. v. Jackson*, 766 S.W.2d 63, 68 (Ky. App. 1989).

Even under the more lenient Kentucky pleading standard, Plaintiffs have not properly stated a claim for negligence against Fields.  Under Rule 8.01, the function of pleadings is to give notice to the opposing party.  *Smith*, 777 S.W.2d at 915.  There is nothing in Plaintiffs' Complaint that would put Fields on notice that he is being sued for negligence.  Although Plaintiffs point to language in the Complaint stating that "the Defendants have a duty to prevent dirt, dust, debris or other flyable materials from escaping their permitted boundaries and entering upon the Plaintiffs' property and contacting the Plaintiffs' person," this language is stated in

14

connection with Plaintiffs' claims for trespass, assault, and battery.  *See* Complaint at ¶¶ 18-21.

The Complaint is devoid of allegations that can fairly be read as claiming negligence, breach of

duty causing injury, or failure to follow the standard of ordinary care.  Under Kentucky law,

complaints can be conclusory in nature as long as fair notice is given.  *Pierson Trapp Co.*, 340

S.W.2d at 460.  Here, however, the Complaint fails to give notice that Plaintiffs claim negligence

against Fields.  As a result, there is no colorable cause of action against Fields for negligence.

Defendants also dispute whether Plaintiffs have asserted a colorable claim for negligent

supervision against Fields.  D.E. 11 at 5, n.2; *see also* D.E. 8-1 at 16 (arguing that Fields's

affidavit "still permits the possibility that Fields may have negligently or tortiously supervised

the specific activities or omissions that Plaintiffs allege likely caused their alleged damages"

(emphasis in original)).  Kentucky recognizes the tort of negligent supervision and notes that an

individual may be personally liable "in management and supervision of corporate employees and

corporate activities."  *Smith*, 777 S.W.2d at 914.  For the reasons previously discussed, Plaintiffs

have failed to plead a claim of negligent supervision against Fields.  The Complaint is devoid of

facts *or* conclusions that would put Fields on notice that he is being sued for negligent

supervision.  Because Plaintiffs have failed to properly plead this cause of action against Fields,

they have not asserted a colorable claim against Fields for negligent supervision.

    2.   *Vicarious Liability*

Finally, Defendants argue that Plaintiffs have not stated a colorable vicarious liability

claim against Fields for assault, battery, trespass, or strict liability because such a claim is not

cognizable under Kentucky law.  D.E. 11 at 8.  Kentucky recognizes the principle of vicarious

liability, sometimes referred to as the doctrine of respondeat superior.  *Patterson v. Blair*, 172

S.W.3d 361, 363 (Ky. 2005).  Vicarious liability "provides the legal rationale for holding a

master responsible for a tort committed by his servant." *Id.* Under Kentucky law, "[t]he employer is strictly liable only for damages resulting from the tortious acts of his employees. . . . And the employer is only liable for acts of his employee committed in the scope of the employment." *Id.* at 364.

Defendants argue that "[w]hile in certain instances Kentucky law imposes vicarious liability upon an employer for the acts of its employee, there is no legal precedent for imposing vicarious liability on a middle manager like Fields for the acts of his employer or his subordinates." *Id.* at 8-9. Plaintiffs counter that the lack of authority on this issue is not dispositive, citing to *Collins v. Montpelier*, Civ. No. 11-166-ART, 2011 WL 6150583 (E.D. Ky. Dec. 12, 2011), in which District Judge Thapar noted that all ambiguities in Kentucky law must be resolved in favor of the plaintiffs, and a plaintiff's failure to cite to a single case where his theory of recovery succeeded is not dispositive. D.E. 8-1 at 17-18. Defendants argue that *Collins* is distinguishable because it involved a claim of direct rather than vicarious liability, and the court analyzed several appellate and trial court cases reaching various conclusions on the issue at hand. D.E. 11 at 9-10. Here, Defendants argue, the lack of any Kentucky law imposing vicarious liability on an individual employee "up the chain of command from an intentionally tortious actor" indicates that there is no basis for recovery against Fields. *Id.* at 10.

Plaintiffs have failed to assert a colorable claim against Fields for vicarious liability for a more basic reason. The Complaint is devoid of any facts putting Fields on notice that Plaintiffs are asserting a claim of vicarious liability against him. Although the Court applies Kentucky's more lenient pleading standard in the fraudulent joinder context, the Complaint must still provide Fields with fair notice of all claims against him. *See Smith*, 777 S.W.2d at 915; *see also Pierson Trapp Co.*, 340 S.W.2d at 460. The Complaint alleges that, at all relevant times, Fields "was

engaged as a blaster for ICG Hazard, LLC on its mine site near Plaintiffs' homes."  Complaint at ¶ 4.  Although Defendants contend that Fields worked in supervisory capacity for ICG, Plaintiffs never make this claim in their Complaint.  There are no facts to support a vicarious liability claim against Fields for the acts of an employee he supervised or exercised control over in some way.  Therefore, Plaintiffs have failed to assert a colorable claim for vicarious liability against Fields.

### III.    AMOUNT IN CONTROVERSY

Because Plaintiffs have asserted not one, but four colorable claims against Fields, the Court finds that he was not fraudulently joined, and this case must be remanded to the Perry Circuit Court.  However, for the sake of completeness, the Court addresses the parties' arguments as to whether the amount in controversy requirement has been satisfied.

Plaintiffs contend that Defendants have not met their burden of demonstrating that the amount in controversy exceeds $75,000.00, as required by 28 U.S.C. § 1332(a).  As the removing party, it is Defendants' burden to show by a preponderance of the evidence that the amount in controversy requirement has been met.  *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 572 (6th Cir. 2001).  "This standard 'does not place upon the defendant the daunting burden of proving, to a legal certainty, that the plaintiff's damages are not less than the amount-in-controversy requirement.'"  *Id.* (quoting *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993)).  "To overcome the presumption against removal, however, the removing party must set forth more than theoretical or speculative claims that might take the amount in controversy over the jurisdictional amount."  *Suwala v. Progressive Ins. Co.*, No. Civ. A. 2005-135, 2005 WL 2076490 at *2 (E.D. Ky. Aug. 25, 2005).

To determine the amount in controversy, the Court first looks to the allegations in the Complaint. *Id.* "If the complaint is not dispositive, [the Court] looks to the allegations in the notice of removal. The party requesting removal must set forth, in the notice of removal, specific facts supporting the assertion that the amount in controversy exceeds the amount required by statute." *Id.* (quoting *Nat'l Nail Corp. v. Moore*, 139 F. Supp. 2d 848, 850 (W.D. Mich. 2001)).

In accordance with Kentucky Rule of Civil Procedure 8.01, Plaintiffs' Complaint merely states that Plaintiffs have suffered compensatory and punitive damages well in excess of the Perry Circuit Court's jurisdictional amount of $4,000.00. *See* Complaint at ¶¶ 25, 27. Because the Complaint is not dispositive, the Court must look to the allegations in Defendants' Notice of Removal. Defendants note that Plaintiffs seek the following categories of damages: (1) compensatory damages for the diminution in value of Plaintiffs' land; (2) damages for the deprivation of Plaintiffs' quiet possession and enjoyment of their property and accompanying emotional distress; (3) damages to Plaintiffs' persons arising from assault and battery, including past, present, and future medical and travel expenses, permanent injuries, pain and suffering, and past, present, and future loss of earning capacity; (4) punitive damages; and (4) injunctive relief, including the cessation of mining in close proximity to Plaintiffs' home. D.E. 1 at 8-9.

Defendants further contend, in their Notice of Removal, that the most recent tax-assessed value of Plaintiffs' property is $84,000.00. *Id.* at 10. Defendants note that Plaintiffs' Complaint characterizes the damage to Plaintiffs' property as "severe" and "substantial." *Id.* Given this characterization, Defendants argue, "it is likely that the damages at issue attributable to diminished value to property measure in the tens of thousands." *Id.* Further, Defendants claim, crediting a definition of "substantial" as meaning "in the main," the damages claimed for

diminution in property value are likely $42,001.00 or greater. *Id.* at 10-11. When this amount is combined with damages for emotional distress and bodily injury, Defendants argue, as well as punitive damages and the cost of complying with any injunction imposed, it is more likely than not that the amount in controversy exceeds $75,000.00. *Id.* at 11-13. With respect to injunctive relief, Defendants merely note that "[a]n injunction requiring them not to engage in what is otherwise lawful mining activity would come at a substantial cost to Defendants. While the exact amount of this loss would ultimately depend on the scope of the injunctive relief, any requirement that Defendants cease to engage in its business and lawfully maximize its resources will result in loss of profits and increased cost of overhead." *Id.* at 12.

Although Defendants correctly note that they are not required to prove Plaintiffs' damages to a legal certainty, Defendants have not carried their burden to show that Plaintiffs' damages more likely than not exceed $75,000.00. Indeed, the speculation Defendants rely upon is compounded by the uncertainty in each of the additive steps Defendants take to estimate the total damages at issue. Defendants largely rely upon the most recent tax-assessed value of Plaintiffs' property and Plaintiffs' characterization of damages to their property as "severe" and "substantial." Based upon this characterization, Defendants contend that the damages at issue likely measure in the tens of thousands of dollars, even reaching $42,001.00 or more. While the language in the Complaint indicates that Plaintiffs consider the damage to their property to be serious, it says nothing about the amount Plaintiffs seek to recover. *See Minix v. Kawasaki Motors Corp.*, Civ. Action No. 09-90-ART, 2009 WL 2212282 at *2 (E.D. Ky. July 23, 2009) (noting that language in the complaint that the plaintiff is seeking compensatory and punitive damages for "severe and permanently crippling and disabling bodily injuries . . . certainly indicates that the plaintiff considers his injuries to be serious, [but] it says nothing about the

amount that he seeks to recover."). Indeed, damages could certainly be characterized as substantial or "of a great degree" without approaching half of the property's value. Attempting to discern the amount of damages Plaintiffs are seeking by their use of these adjectives and the additive steps encouraged by Defendants is simply too speculative and lacking in a sufficient factual basis.

Likewise, Defendants contend that an injunction would come at a substantial cost to them, but admit that the ultimate amount of loss would depend upon the scope of injunctive relief. The Court does not doubt that Defendants' removal decision may have been made in good faith, but at this point they have failed to present any non-speculative evidence that the amount in controversy has been satisfied. *See Bowling v. Ryan*, No. Civ. A. 6:05-331-DCR, 2005 WL 1875465 at *3 (E.D. Ky. July 29, 2005) ("[W]hile the Defendants' removal decision may have been made in good faith, they have failed to establish that it was based on anything more than mere speculation."). Although it appears Defendants have put forth their best efforts to determine the amount of damages Plaintiffs are seeking, they could have taken discovery with respect to the specific monetary amounts. *See id.* Defendants have "provided *some* information from which a reasonable person *could* infer that the amount in controversy is greater than [$75,000.00]. . . . But a mere possibility is not enough." *Carter v. Pikeville Med. Ct'r*, Civ. Action No. 10-105-ART, 2010 WL 4483968 at *5 (E.D. Ky. Nov. 1, 2010). Construing "[a]ll doubts as to the propriety of removal . . . in favor of remand," *Coyne*, 183 F.3d at 493, the Court finds that Defendants have not met their burden of showing that the amount in controversy requirement is satisfied.

## IV.   ATTORNEY'S FEES

Plaintiffs have also moved for an award of attorney's fees under 28 U.S.C. § 1447(c). D.E. 8-1 at 26-27.  The Court, as part of a remand order, "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  Although the Court recommends remanding this case back to state court, it cannot say that Defendants' removal lacked an objectively reasonable basis.  Accordingly, this is not one of the rare cases where an award of attorney's fees is justified, and Plaintiffs' Motion for an Award of Attorney's Fees and Costs should be **DENIED.**

## V.   RECOMMENDATION

For the reasons set forth herein, the Court **RECOMMENDS** that Plaintiffs' Motion to Remand and for an Award of Attorney's Fees and Costs Pursuant to 28 U.S.C. § 1447(c) (D.E. 8) be **GRANTED, in part,** and **DENIED, in part.**  The Court **RECOMMENDS** that Plaintiffs' Motion to Remand be **GRANTED**, but that Plaintiffs' Motion for an Award of Attorney's Fees and Costs be **DENIED.**   Accordingly, the Court **RECOMMENDS** that this matter be **REMANDED** to the Perry Circuit Court and **STRICKEN** from this Court's active docket.

The Court directs the parties to 28 U.S.C. § 636(b)(1) and Rule 72(b) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute.  Failure to make timely objection, properly raised, consistent with the statute and Rule may, and normally will, result in waiver of further appeal to or review by the District Court and

Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 1st day of March, 2013.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge